John W. HILL, Plaintiff-Appellant,

v.

TEXACO, INC., Defendant-Appellee.

No. 86–5679.

United States Court of Appeals,
Eleventh Circuit.

Aug. 24, 1987.

Steven D. Tishler, Miami, Fla., Jose A. Garcia, Seffner, Fla., for plaintiff-appellant.

Robert W. Wells, Smathers & Thompson, Miami, Fla., for defendant-appellee.

Before FAY and EDMONDSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Appellant John Hill filed suit against Texaco, Inc., alleging a violation of the Petroleum Marketing Practices Act, 15 U.S.C. sec. 2801 et seq. (1982) (hereinafter "PMPA"). The United States District Court for the Southern District of Florida dismissed the suit as barred by the PMPA's statute of limitations. We affirm.

On February 1, 1980, Hill and Texaco entered into a three-year lease whereby Hill leased a service station in Miami, Florida. In October, 1982, Texaco advised Hill that the company would not renew his franchise in 1983 because Texaco had decided "to sell the leased marketing premises." In November, Texaco offered to sell the premises to Hill for $326,000.00. Hill counter-offered with a purchase price of $225,000.00. Texaco reduced its offer to $325,000.00 and, according to Hill, told him that the company would have no problem getting that price for the property. Hill rejected Texaco's offer without a counter-offer. Soon thereafter, Hill had the premises appraised; and the appraiser set the value at $225,000.00. The franchise ended on January 31, 1983.

Seventeen months later, on May 23, 1984, Texaco sold the service station premises to a third party for $240,000.00. The deed contained a covenant whereby the purchasers agreed not to sell any motor fuels for a period of ten years after the sale. When Hill learned of the sale, he sued Texaco for violation of 15 U.S.C. sec. 2802(b)(3)(D)(iii).

That statute requires that a petroleum franchisor deciding to sell leased premises make the franchisee a bona fide offer to sell the premises. Hill claimed that Texaco's sale of the property for an amount only slightly higher than what he offered combined with the covenant not to sell motor fuels proves that Texaco's offer to sell the premises to him for $325,000.00 was not bona fide. Texaco filed a motion to dismiss the complaint and an alternative motion for summary judgment on the grounds that the suit was barred by the one-year PMPA limitation, 15 U.S.C. sec. 2805. The district court granted summary judgment to Texaco, and Hill appeals to this court.

The PMPA limitation provides:

no such action may be maintained unless commenced within 1 year after the later of—

(1) the date of termination of the franchise or nonrenewal of the franchise relationship; or

(2) the date the franchisor fails to comply with the requirements of section 2802 or 2803 of this title.

15 U.S.C.A. sec. 2805(a) (1982).

In this statute, Congress established a definite limitation to begin at a specific time—"the date of termination ... or non-renewal ... or ... the franchisor fails to comply with the requirements of section 2802." When Congress enacted the PMPA, it was aware of the abusive practices of some oil franchisors, yet deliberately chose an extremely short statute of limitations. It is not our place to contradict Congress' policy choices. Hill's rights are statutorily created and statutorily limited; and Congress has explicitly defined the time period within which those rights must be exercised.

■ Accordingly, the latest date under 15 U.S.C. sec. 2805 that the limitation period started was on January 31, 1983, when Hill's franchise was not renewed. Hill did not file his complaint until May 21, 1985; therefore, his action is barred by the statute of limitations.

Hill argues that the statute of limitations was tolled because Texaco concealed its intention to sell the station to someone who would agree not to sell motor fuel. We cannot agree.

■ Generally, equitable tolling principles are read into federal statutes of limitation, but equitable tolling is a matter of congressional prerogative and cannot be applied in the face of contrary congressional intent. *Cook v. Deltona,* 753 F.2d 1552, 1562 (11th Cir.1985). In this case, Congress indicated its contrary intent by specifying that "no action shall be maintained unless commenced within one year of ... the date of" the violation, i.e. the bad faith offer, or the date that the franchise ended. These are plain words. We think Congress said what it meant. Unlike other statutory limitations, Congress said nothing here about starting the limitation period upon discovery of the violation or about starting the limitation period once the cause of ac-

tion accrued.[1] The parties have not cited nor have we been able to find cases where the Supreme Court or this circuit has applied equitable tolling to statutes expressly establishing an exact starting point, such as, the date of violation or the date that the franchise ended, for a limitations period. Precise language combined with the extremely short limitations period convinces us that Congress did not intend for this limitation to be enlarged by the courts. "If Congress explicitly puts a limit upon the time for enforcing a right which it enacted, there is an end to the matter." *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946).

■ Furthermore, even if ordinary tolling principles were available in PMPA cases, they would be of no help to appellant. As a general rule, a plaintiff relying on the doctrine of fraudulent concealment must show affirmative actions by the defendant constituting concealment.[2] *Rutledge v. Boston Woven Hose & Rubber Co.,* 576 F.2d 248 (9th Cir.1978); *Prather v. Neva Paperbacks, Inc.,* 446 F.2d 338 (5th Cir.1971); *cf. United Klans of America v. McGovern,* 621 F.2d 152 (5th Cir.1980).[3] He must also show that he exercised diligence to discover his cause of action within the limitations period. *Summer v. Land & Leisure, Inc.,* 664 F.2d 965, 969–70 (5th Cir. Unit B 1981), *cert. denied,* 458 U.S. 1106, 102 S.Ct. 3485, 73 L.Ed.2d 1367 (1982). The standard for a discovered wrong is a minimal one: "Any fact that should excite his suspicion is the same as actual knowledge of his entire claim." *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir.1975); *see also, Wood v. Carpenter,* 101 U.S. (11 Otto) 135, 25 L.Ed. 807 (1879).

■ In this case, Hill has shown no actions by Texaco amounting to affirmative

---

1. At the time that the PMPA was enacted, Congress knew that limitations that they expressed in terms of an action being brought within a given time "after the cause of action accrues" were consistently read by federal courts to mean within a given time after the plaintiff knows or should know of the injury. *See, e.g., Bridgford v. United States,* 550 F.2d 978, 981–82 (4th Cir.1977) (FTCA malpractice claim); *Exnicious v. United States,* 563 F.2d 418, 420–21 (10th Cir.1977); *Grosz v. Andrus,* 556 F.2d 972, 974 (9th Cir.1977) (28 U.S.C. 2409a(f)); *Quinton v. United States,* 304 F.2d 234, 240 (5th Cir. 1962); *cf. Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir.1975) (sec. 1983, statute of limitations borrowed from state law). Congress sometimes stated explicitly that the statute of limitations was not to start until the plaintiff knew of the wrong. *See, e.g.,* 15 U.S.C.A. sec. 1711 (West 1982).

Courts assume that Congress knows the status of the case law and legislates accordingly. *Director, Office of Workers' Compensation, U.S. Dept. of Labor v. Perini North River Associates,* 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983); *Florida National Guard v. Federal Labor Relations Authority,* 699 F.2d 1082 (11th Cir.), *cert. denied,* 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983). In setting the PMPA limitation period, Congress did not use any language tied explicitly or implicitly to discovery of wrongdoing. It started the limitation period not when the violation was discovered, but simply on *"the date"* of the statutory violation or the end of the franchise.

2. There are two exceptions to this rule. The first is where the defendant has a fiduciary responsibility to make disclosure. *Rutledge v.*

*Boston Woven Hose & Rubber Co.,* 576 F.2d 248 (9th Cir.1978). Hill has made no showing of any such relationship here.

The second exception is where the wrong is of such a character as to be self-concealing. *Hobson v. Wilson,* 737 F.2d 1, 33–36 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Some might argue that a non-bona fide offer is a form of fraud and, thus, a self-concealing wrong; but, at least, usually the franchisor's very offer to sell (by its excessive asking price or other unusual circumstances) discloses the issue of bad faith. Put differently, non bona-fide offers tend—as in this case—to be self-revealing wrongs rather than self-concealing wrongs. Moreover, if courts were to equate non-bona fide offers with self-concealing wrongs and then apply the self-concealing wrong exception, section 2805 would never apply to such offers and the one-year limitation from the date of the statutory violation would be both meaningless and superfluous. The implied exception would gobble up Congress's expressed rule. There is no reason to think this was Congress's intent.

Of course, under either of these exceptions, the plaintiff still must show that he exercised due diligence to discover his cause of action. *Id.* at 35.

3. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

concealment and no due diligence on his part. In fact, the record shows that shortly after he and Texaco began negotiations, he knew that the property was appraised at a value much lower than the price that Texaco was asking. That appraisal should have put him on notice if, as he claims, Texaco deliberately and in bad faith inflated their purchase price. Even if equitable tolling were applicable in PMPA cases, then, it would not apply in this case.

Accordingly, the judgment of the district court is AFFIRMED.

MORGAN, Senior Circuit Judge, concurring specially:

I concur in Judge Edmondson's opinion except for the section concluding that equitable tolling principles do not apply to 15 U.S.C.A. § 2805(a) (1982). Equitable tolling principles are read into every federal statute of limitations, *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743, 748 (1946), unless there is congressional intent to the contrary. *See e.g. Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 234, 79 S.Ct. 760, 762, 3 L.Ed.2d 770, 773 (1959); *Aldrich v. McCullock Properties, Inc.*, 627 F.2d 1036, 1042 (10th Cir.1980).

In *Cook v. Deltona Corp.*, 753 F.2d 1552 (11th Cir.1985), this court considered the application of equitable tolling to 15 U.S.C. § 1711 (1976). At the time, § 1711 read as follows:

> No action shall be maintained to enforce any liability created under section 1709(a) or (b)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 1709(b)(1)

of this title, unless brought within two years after the violation upon which it is based. In no event shall any such action be brought by a purchaser more than three years after the sale or lease to such purchaser.

The *Cook* court held that although the one year statute of limitations of § 1711 was susceptible to equitable tolling, Congress had specifically exempted the three year limitation from the principle. The court concluded that "[w]here the statute expressly provides for a tolling period for a fraudulent concealment, and then includes a secondary date which 'in no event' can be surmounted, there is good basis for belief that the latter date was intended as an absolute barrier to the filing of suit." *Cook*, 753 F.2d at 1562 (quoting *Timmreck v. Munn*, 433 F.Supp. 396, 408 (N.D.Ill. 1977)). In this case, Congress was not so specific in exempting § 2805(a) from equitable tolling coverage.[1] Without precedent or clear congressional guidance, this court should not refuse to apply equitable tolling principles to § 2805(a).

Furthermore, the limitation of equitable tolling is unwarranted since it is unnecessary to the result in this case. The factors necessary for equitable tolling, affirmative concealment by the defendant and due diligence by the plaintiff in discovering his cause of action, are not present in this case. Equitable tolling, although applicable to § 2805(a), does not aid plaintiff. The facts of this case do not require us to hold that equitable tolling never applies to § 2805(a).

Accordingly, I specially concur in the affirmance of the district court.

---

1. In its entirety, 15 U.S.C.A. § 2805(a) (1982) provides the following:

    If a franchisor fails to comply with the requirements of section 2802 or 2803 of this title, the franchisee may maintain a civil action against such franchisor. Such action may be brought, without regard to the amount in controversy, in the district court of the United States in any judicial district in which the principal place of business of such franchisor is located or in which such franchisee is doing business, except that no such action *may* be maintained unless commenced within 1 year after the later of—
    (1) the date of termination of the franchise or nonrenewal of the franchise relationship; or
    (2) the date the franchisor fails to comply with the requirements of section 2802 or 2803 of this title.
    (Emphasis added).