150 F.3d 689
 Jerry and Mary TAYLOR, et al., Plaintiffs-Appellants,
v.
QUALITY HYUNDAI, INC., Bank One Milwaukee, N.A., and Bank
One Chicago, N.A., Defendants-Appellees.
Davita M. SMITH, et al., Plaintiffs-Appellants,
v.
DESI AUTO SALES, INC., and Guardian National Acceptance
Corp., Defendants-Appellees.
 Nos. 96-3658, 97-1208.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 22, 1997.
Decided July 20, 1998.
Rehearing Denied Aug. 21, 1998.
 
 Daniel A. Edelman, Cathleen M. Combs, Michelle A. Weinberg, Tara L. Goodwin, James O. Latturner (argued), Beth I. Solomon, Edelman & Combs, Chicago, IL, for Plaintiffs-Appellants Jerry and Mary Taylor.
 Daniel A. Edelman, Cathleen C. Cohen, James O. Latturner (argued), Edelman & Combs, Chicago, IL, for Plaintiffs-Appellants Davita M. Smith.
 James J. Roche, Monica M. Tynan, Roche & Associates, Chicago, IL, for Defendant-Appellee Quality Hyundai, Inc.
 Kevin M. Flynn, Joseph A. Cari, Jr., Lisa J. Finks, John P. Buckley (argued), Ungaretti & Harris, Chicago, IL, for Defendants-Appellees Bank One, Milwaukee, N.A., Bank One, Chicago, N.A.
 John DeSimeon, Elk Grove Village, IL, for Defendant-Appellee DeSi Auto Sales, Inc.
 Mark S. Bernstein, Ray G. Rezner, Richard A. Saldinger, Barack, Ferrazzano, Kirschbaum & Perlman, Chicago, IL, Brian G. Shannon (argued), R. Christopher Cataldo, Jaffe, Snider, Raitt & Heuer, Detroit, MI, for Defendant-Appellee Guardian National Acceptance Corp.
 George A. Platz, Robert M. Hatch, Malik R. Diab, Lovell, White & Durrant, Chicago, IL, for Amicus Curiae American Financial Services Association.
 Before CUDAHY, KANNE, and DIANE P. WOOD, Circuit Judges.
 DIANE P. WOOD, Circuit Judge.
 
 
 1
 In Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283 (7th Cir.1997), this court held that consumers stated a claim under the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 et seq., when they charged that automobile dealers had not disclosed their retention of a portion of extended warranty charges reported as "Amounts Paid to Others on Your Behalf." The two cases we have consolidated for opinion purposes, both of which were dismissed below, raise in part the same question, and in part the related question whether a dealer's assignee is liable for such alleged misrepresentations by the dealer. We conclude that Gibson controls the question of dealer liability, which is raised only in the appeal in Taylor v. Quality Hyundai, Inc., 150 F.3d 689 (7th Cir.1998), and it requires us to remand that part of the case to the district court for further proceedings. As for the assignees, however, we agree with the district courts that Congress has precluded liability unless the violation is apparent on the face of the disclosure statement or other assigned documents, and that the relevant statements here do not meet that standard. We therefore affirm the decisions below on the question of assignee liability.
 
 
 2
 The facts in these cases are similar, both to each other and to the facts presented in Gibson. Jerry and Mary Taylor bought a new Hyundai Accent in July 1995, and they bought an extended warranty from the dealer, Quality Hyundai, at the same time. They signed a motor vehicle retail installment contract committing them to pay $12,081 for the car (minus a $900 down payment), and $1,395 for the extended warranty. In conjunction with the sale, Quality gave them a TILA disclosure form that included, under the now-familiar heading "Amounts Paid to Others for You," an entry reporting $1,395 paid to the warranty provider. After the sale, Quality assigned the entire installment contract to Bank One Chicago (although the contract signed by the Taylors designated Bank One Milwaukee as the assignee). The story in Davita Smith's case is practically identical, except that she bought her car (a 1991 Mercury Cougar) from DeSi Auto Sales, her TILA form showed $799 "Paid to Others for You" for an extended warranty, and her installment contract was assigned to Guardian National Acceptance Corporation ("Guardian").
 
 
 3
 The Taylors and Smith alleged that the statements indicating that the extended warranty charges were "Amounts Paid to Others for You" were false, in that neither Quality nor DeSi paid the full amount to the warranty provider. In both cases the plaintiffs also alleged that the respective assignees of their installment contracts, Bank One and Guardian, were sophisticated players in the lending market who must have known that the statements on the TILA forms were false. They therefore sought damages under the TILA, 15 U.S.C. § 1641(a). Both district courts ruled for the assignees. In the Taylors' the district court also concluded that Quality was not liable under the statute. In Smith's case, the district court entered a default order against DeSi and stayed Smith's motion for class certification against it. DeSi is therefore not a party to this appeal, but Guardian is properly here because the district court certified the judgment in Guardian's favor under Federal Rule of Civil Procedure 54(b). See United States v. Ettrick Wood Products, Inc., 916 F.2d 1211, 1217-18 (7th Cir.1990).
 
 
 4
 1. Liability of Quality Hyundai. To the extent the Taylors are asserting TILA claims against Quality Hyundai for the allegedly misleading disclosures on the form, their suit is identical to the one considered in Gibson. Gibson holds that persons like the Taylors may state a claim under the TILA against a dealer who fills out a TILA form in a misleading fashion. 112 F.3d at 286-87.
 
 
 5
 There is one additional issue not governed by Gibson, which is whether the district court erred when it denied the Taylors' motion to amend their complaint to allege that Quality systematically charged a higher mark-up on extended warranties for credit customers than it did for cash customers. On the one hand, all of the information necessary to support the proposed amendment was available to the plaintiffs long before their case was dismissed, and we normally review a district court's decisions under Federal Rule of Civil Procedure 15(a) deferentially. See Helm v. Resolution Trust Corp., 84 F.3d 874, 879 (7th Cir.1996) (abuse of discretion); Tavarez v. O'Malley, 826 F.2d 671, 678 (7th Cir.1987) (same). On the other hand, this case will receive a fresh start when it returns to the district court for further proceedings consistent with our opinion in Gibson. Thus, while we are reluctant to find that the district court abused its discretion in refusing the amendment when it did, it may wish to reconsider this ruling if the plaintiffs renew their motion on remand, in light of the intervening Gibson decision and the unlikelihood of prejudice to the defendant.
 
 
 6
 2. Liability of Guardian and Bank One. In 1975, the Federal Trade Commission (FTC) issued a regulation requiring sellers to include the following words on consumer credit contracts:
 
 NOTICE
 
 7
 ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
 
 
 8
 16 C.F.R. § 433.2(a) (1997). Relying on this "Holder Notice," the plaintiffs all argue that Guardian and Bank One, as holders of the consumer credit contracts in question, are vulnerable to the same TILA claims that the plaintiffs may raise against Quality and DeSi, the sellers of the extended warranties. Unfortunately for the plaintiffs, however, the FTC's regulation is not the last word on this subject.
 
 
 9
 In 1980, Congress amended the part of the TILA that deals with assignees to read as follows:
 
 
 10
 (a) Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter ... which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.
 
 
 11
 15 U.S.C. § 1641(a). Prior to this amendment, the statutory provisions that assured transfer of the forms containing the TILA disclosures to the assignee also made it possible for the debtor to claim that the assignee had "knowledge" of the violation. The amendment therefore narrowed considerably the potential scope of assignee liability. See H.R. Conf. Rep. No. 96-842, at 80-81 (1980), reprinted in 1980 U.S.C.C.A.N. 298, 310-11; S. Rep. No. 96-368, at 32-33 (1979), reprinted in 1980 U.S.C.C.A.N. 236, 267-69.
 
 
 12
 Guardian and Bank One argue that the unmistakable effect of the 1980 amendment is to trump the FTC's Holder Notice, under which they would have been subject to any claims and defenses that the debtors could have asserted against the original sellers. Although no court of appeals has yet decided this question, every district court to which it has been presented has agreed with their reading of the statute. See, e.g., Taylor v. Bob O'Connor Ford, Inc., 1998 WL 177689, at * 9-11 (N.D.Ill. Apr.13, 1998); Brister v. All Star Chevrolet, Inc., 986 F.Supp. 1003, 1009-10 (E.D.La.1997); Kinzel v. Southview Chevrolet Co., 892 F.Supp. 1211, 1217(D.Minn.1995). See also Clontz, Truth-in-Lending Manual pp 8.06[c], 10.09 (rev. ed.1996). If the district courts are correct, then the only question left for us to decide is whether the violations in these cases were "apparent on the face of the disclosure statement," within the meaning of § 1641(a). But the plaintiffs have argued that we should reject this reading of the statute. We explain first why we think the lower courts properly understood the law, and then we discuss the statutory exception for "apparent" violations.
 
 
 13
 The plaintiffs initially argue that the TILA actually has nothing to do with the assignees' liability in these cases, because they are bound under the terms of the contracts they accepted, wholly apart from the statute. The retail installment contracts repeat the language of the FTC's Holder Notice (as they must, under 16 C.F.R. § 433.2), which announces that any holder of the contract is subject to claims and defenses that could be brought against the original seller. When Guardian and Bank One accepted the assignments, the plaintiffs reason, they voluntarily waived any right to rely on the statutory defense provided by § 1641(a). In our view, however, this misconstrues the effect of the Holder Notice insofar as it governs TILA-based claims. As a legally required part of every consumer financing contract, the Holder Notice continues to perform an important function even in the contracts between the plaintiffs and their respective assignees. If the cars they purchased turn out to be lemons and they assert a right to withhold payment against the sellers, they may also assert the same right against the assignees. See, e.g., Mount v. LaSalle Bank Lake View, 926 F.Supp. 759, 763-64 (N.D.Ill.1996); Maberry v. Said, 911 F.Supp. 1393, 1401-03(D.Kan.1995). But § 1641(a) has limited one set of claims that they may carry through to the assignee, namely, those based on a "violation of this subchapter [i.e. Title 15 U.S.C., ch. 41, subchapter 1]." The Holder Notice, even though contained within the contract, was not the subject of bargaining between the parties, and indeed could not have been. It is part of the contract by force of law, and it must be read in light of other laws that modify its reach. See, e.g., Robbins v. Bentsen, 41 F.3d 1195, 1198 (7th Cir.1994) ("Regulations cannot trump the plain language of statutes ..."); Foster v. Celani, 849 F.2d 91, 92 (2d Cir.1988). Cf. Morley-Murphy Co. v. Zenith Electronics Corp., 142 F.3d 373, 380-81 (7th Cir.1998). We therefore reject the plaintiffs' contract-based effort to side-step § 1641(a).
 
 
 14
 Next, the plaintiffs argue that there really is no conflict between the Holder Notice and § 1641(a), apparently because Congress did not think to include language in the statute that exempts assignees from the FTC's regulations, and additionally because the FTC has not amended its rule since the passage of the 1980 amendment. Neither of these points is persuasive. There is no reason for Congress expressly to address regulatory language that will become (in part) superseded by subsequent legislation; it is the responsibility of the agency instead to conform its rules to any pertinent new laws. Cf. United States v. Larionoff, 431 U.S. 864, 873 & n. 12, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). As for the lack of change in the rule, we have already noted that the Holder Notice continues to allow the debtor to raise many claims and defenses against the assignee that he or she may have against the original seller; § 1641(a) limits only certain TILA claims. Under the circumstances, the FTC may have seen no need to change its regulation.
 
 
 15
 Plaintiffs also argue that § 1641(a) limits only direct claims against the assignee that could be asserted without regard to the procedural and damages limitations that apply in actions against the seller. They refer here to 15 U.S.C. § 1640, which limits statutory damages in a class action to the lesser of 1% of the net worth of the defendant or $500,000. The problem with this argument is straightforward: nothing in § 1641 supports it. Section 1641 applies to "any civil action for a violation of this subchapter" (of which both § 1640 and § 1641 are a part), which surely encompasses actions that implicate the procedural and damages rules of § 1640.
 
 
 16
 Plaintiffs' last effort to avoid the effect of § 1641 concedes its applicability, but asserts that they qualify for the exception for violations that are "apparent on the face" of the disclosure statements. They argue that the apparentness (or lack thereof) of a violation should be ascertained in light of the knowledge that a reasonable assignee similarly situated to the defendants should have. Guardian and Bank One, as active participants in the financing market, know about common industry practices in this market. From that, plaintiffs argue that the assignees must have known that an extended warranty charge listed as an "Amount Paid to Others for You" on their TILA forms included an undisclosed commission imposed by the original creditors--ergo, the violation of the TILA was apparent on the face of the documents to these assignees.
 
 
 17
 The statute describes two ways in which an "apparent" violation can be detected: "(1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." 15 U.S.C. § 1641(a). Plaintiffs are not arguing that the violations here were "apparent" based on the second of those possibilities. We therefore consider only the first.
 
 
 18
 Even though we do not assume that assignees approach their tasks with blank minds, we cannot agree that awareness of the practices of some creditors can be equated to knowledge that a particular disclosure on a particular TILA form is inaccurate or incomplete. These are good cases in point. Suppose that 75%, or even 90%, of all automobile dealers in the greater Chicago area engage in the practice about which the plaintiffs are complaining. That still does not mean that an employee of a bank or other financial institution could tell, simply by looking at the face of the documents assigned, whether the particular TILA statement before her was inaccurate or incomplete. One out of four, or one out of ten, might be perfectly accurate. In effect, the rule for which the plaintiffs are arguing would impose a duty of inquiry on financial institutions that serve as assignees. Yet this is the very kind of duty that the statute precludes, by limiting the required inquiry to defects that can be ascertained from the face of the documents themselves. A useful analogy is the duty of banks to review documents presented under a letter of credit. Like an assignee bank reviewing a TILA statement, a bank reviewing a letter of credit is responsible for noticing facial irregularities, such as statements that are illegal, impossible, or in conflict with other terms. See, e.g., Instituto Nacional De Comercializacion Agricola (Indeca) v. Continental Illinois Nat'l Bank and Trust Co., 858 F.2d 1264, 1269-70 (7th Cir.1988). But in neither instance does the bank have a duty to seek out additional information before it makes its own decision to accept the tender of the documents, or to accept the assignment with the protection afforded by § 1641(a). We hold that § 1641(a) does not impose a duty of additional inquiry on assignees. Only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA. Since no such violation exists here, neither Guardian nor Bank One is liable to the plaintiffs.
 
 
 19
 Because we conclude that § 1641(a) by its terms bars the claims against the assignees, we have no need to address the additional arguments the defendants and their amicus have raised, including the suggestion that the plaintiffs are precluded from recovering against the assignees because they received what they bargained for: a car plus an extended warranty. This is merely the defendants' version of the untenable position that a regulation (the Holder Notice) trumps a statute (the TILA). See Bank One's Brief at 12-14 (arguing that limited remedies available under the Holder Notice control remedial scope of the TILA). The Taylors and Smith correctly argued that (a) they were told they paid $1,395 and $799 respectively for an extended warranty; (b) in fact only part of the money went to pay for the warranty; and (c) the difference between the amount paid and the actual cost of the warranty inflated either the finance charge or the price of the vehicle. This is no different than if a TILA disclosure statement falsely reported that the interest rate on a credit sale was 18% when it was really 25%. Even if the contracted-for goods or services were delivered under these conditions, that would not mean there was no TILA violation. See § 1641(a) ("any civil action for a violation of this subchapter ... which may be brought against a creditor may be maintained against any assignee of such creditor [for a violation apparent on the face of a disclosure statement] ...") (emphasis added); Cowen v. Bank United of Texas, 70 F.3d 937, 940-41 (7th Cir.1995).
 
 
 20
 For the foregoing reasons, we AFFIRM the judgment in Taylor v. Quality Hyundai, Inc., No. 96-3658, in favor of Bank One, and we REVERSE the judgment in that case for Quality Hyundai and Remand for further proceedings. We AFFIRM the judgment in Guardian's favor in Smith v. DeSi Auto Sales, Inc., No. 97-1208. Each party should bear its own costs in Taylor.