BARKETT, Circuit Judge:
Plaintiffs Paul and Peggy Ellis (“Ellises”) appeal the dismissal of their suit against the General Motors Acceptance Corporation (“GMAC”) alleging violations of the Truth in Lending Act, 15 U.S.C. § 1640(e) (1997) (“TILA”). The district court dismissed the complaint on the grounds that the statute of limitations had expired and, alternatively, that under 15 U.S.C. § 1641, GMAC was exempted from liability under TILA. On appeal the Ellises argue that the statute of limitations was suspended by the doctrine of equitable tolling and that, by writing and signing the contract, GMAC voluntarily agreed to expanded liability. We find that TILA is subject to equitable tolling but that GMAC, as an assignee, is not liable for the TILA violations alleged.

Background

The Ellises’ claim derives from their purchase of a 1993 Saturn SL-2 from Royal Oldsmobile (“Royal”) on May 22, 1995. At the same time that they bought the car, the Ellises purchased an extended warranty for an additional $1,195. They financed the car and warranty through a Retail Installment Contract (“RIC”) and the loan was assigned to GMAC simultaneously with the contract’s execution. In the section itemizing the amount financed, the RIC listed $1,195 as being paid to “Mechanic” for the extended warranty. The Ellises allege that this listed payment constituted misrepresentation because substantially less than $1,195 was paid to this third party. They claim that only a small portion of this amount was paid to “Mechanic” and that Royal retained the rest. The Ellises brought suit against GMAC on January 14, 1997, eighteen months after purchasing the car and warranty, and the district court subsequently granted GMAC’s motion to dismiss the suit for failure to state a claim. See Fed.R.Civ.P. 12(b)(6).
The Ellises recognize that, under TILA, they had only one year from the time they purchased the car and warranty to bring an action.[1] They argue, however, that because they were prevented from learning that the total amount paid by Royal to Mechanic was misrepresented on the disclosure document, equitable tolling applies to suspend the statute of limitations. The Ellises further argue that, notwithstanding the language of 15 U.S.C. § 1641(a) holding assignees liable under TILA only for violations apparent on the face of the disclosure statement, GMAC contractually obligated itself to assume liability for any cause of action that could have been *706 brought against the seller, including this claim for misrepresentation. Thus, they assert that the district' court erred in dismissing their complaint.
We review dismissals pursuant to Rule 12(b)(6), de novo, taking all the material allegations of the complaint as true while liberally construing the complaint in favor of the plaintiff. Roberts v. Florida Power & Light Co., 146 F.3d 1305, 1307 (11th Cir.1998). A court may dismiss a complaint “only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.” Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

Discussion

1. Statute of Limitations
Because the district court determined that TILA’s statute of limitations is jurisdictional and that its expiration deprived the court of subject matter jurisdiction, we must first address this threshold issue. When Congress enacts statutes creating public rights or benefits, it can impose time limits on their availability. These time limits can either completely extinguish the right or simply bar the remedy for enforcement. In the former case, jurisdiction does not exist because the cause of action has been totally extinguished. In the latter case, the court continues to have jurisdiction and has the discretion to consider particular circumstances affecting the ability of a party seeking review to comply with the time limits, which can be tolled when principles of equity render their rigid application unfair. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); Holmberg v. Armbrecht, 327 U.S. 392, 395-96, 66 S.Ct. 582, 90 L.Ed. 743 (1946).
“Equitable tolling” is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances. See Bailey v. Glover, 88 U.S. (21 Wall.) 342, 347, 22 L.Ed. 636 (1874) (where a party injured by another’s fraudulent conduct “remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered ...”). See also Osterneck v. E.T. Barwick Indus., 825 F.2d 1521, 1535 (11th Cir.1987), aff'd, Osterneck v. Ernst & Whinney, 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989) (if third party is in privity, or a principal-agent relationship with the defendant exists, defendant’s approval of the concealment may be sufficient to toll the statute). Unless Congress states otherwise, equitable tolling should be read into every federal statute of limitations. Holmberg, 327 U.S. at 394-96, 66 S.Ct. 582.
In this case, the district court concluded that TILA was a jurisdictional statute and that the Ellises’ claim was therefore time-barred. The Ellises maintain that 15 U.S.C. § 1640(e) is not a jurisdictional statute but rather a statute of limitations subject to equitable tolling.
The issue of whether TILA is subject to equitable tolling is one of first impression in this circuit. Every other circuit that has considered the issue has held that TILA is subject to equitable tolling. See Ramadan v. Chase Manhattan Corp., 156 F.3d 499 (3rd Cir.1998) (under facts virtually identical to those here, court found § 1640(e) subject to equitable tolling); Jones v. TransOhio Savings Ass’n., 747 F.2d 1037, 1041 (6th Cir.1984) (§ 1640(e) subject to equitable tolling); King v. California, 784 F.2d 910, 914-15 (9th Cir.1986) (accord with TransOhio); Kerby v. Mortgage Funding Corp., 992 F.Supp. 787 (D.Md.1998); see also Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F.3d 1157, 1166-67 (7th Cir.1997) (citing King and TransOhio with approval).[2]
*707 GMAC contends, however, that we should not follow the other circuits because our own precedent in Hill v. Texaco, Inc., 825 F.2d 333 (11th Cir.1987) forecloses a finding that equitable tolling applies here. We find Hill to be inapposite. Hill did not involve TILA, but rather the Petroleum Marketing Practices Act (“PMPA”), 15 U.S.C. § 2802(b)(3)(D)(iii). Plaintiff, a Texaco franchisee, sued Texaco alleging that Texaco had acted in bad faith when offering him right of first refusal on the sale of his leased property. Texaco had offered to sell Hill the property for $326,000 even though the land had been appraised at $225,000. Hill refused and seventeen months later Texaco sold the property to a third party for $240,000. Hill then sued, claiming that Texaco’s offer to him was not bona fide and therefore violated the PMPA. Id. at 334. The statute of limitations in PMPA is one year. Hill filed suit after more than a year had elapsed arguing that, because fraudulent concealment prevented his learning of the violation until after the statute had tolled, equitable tolling should apply.
The Hill court disagreed, recognizing that, while equitable tolling is typically read into federal statutes of limitation, it cannot apply in the face of contrary congressional intent. Id. “[T]he basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances.” Burnett v. New York Central R.R. Co., 380 U.S. 424, 427, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). To determine whether equitable tolling applies, courts “examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the ... Act.” Id.
PMPA has a very specific purpose—protecting franchisees from wrongful termination of their franchises.[3] It begins to run from the time of a specific event of which the claimant would have certain knowledge, i.e., the termination or nonrenewal of his/her franchise. Although Congress wished to shield franchisees from unfair business practices by giving them the right of first refusal on the sale of their leased property, it clearly did not intend to create an indefinite right of action in the event the franchiser decides at a later date to part with the property at a lower price. See Hill, 825 F.2d at 334 (noting that when Congress enacted PMPA, it was aware of abusive practices by some oil franchisers yet deliberately chose a short statute of limitations). In light of the statute’s stated purpose and language, the Hill court concluded that PMPA represents a narrow exception to the general rule that equitable tolling applies to all federal statutes of limitation. See id. at 334-35.
In this case, we examine TILA, a consumer protection statute which, though possessing a limitations period similar to PMPA, is remedial in nature and therefore must be construed liberally in order to best serve Congress’ intent. See McGowan v. King, Inc., 569 F.2d 845, 848 (5th Cir. Mar.15, 1978).[4] The section of TILA addressing Congressional findings and the statute’s declaration of purpose states in relevant part:
(a) Informed use of credit
The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms ... would be strengthened by the informed use of con *708 sumer credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.
15 U.S.C. § 1601.
Despite TILA’s clearly remedial purpose, if we were to read its time limit literally, consumers whose cause of action was fraudulently concealed from them until after a year had passed could not pursue a cause of action under TILA. That would lead to the anomalous result that a statute designed to remediate the effects of fraud would instead reward those perpetrators who concealed their fraud long enough to time-bar them victims’ remedy. We cannot believe this was Congress’ intent. Rather, in these circumstances we apply the general rule that equitable tolling applies to all federal statutes unless the statute states otherwise. Holmberg, 327 U.S. at 394-95, 66 S.Ct. 582. We therefore agree with the Third, Sixth, and Ninth Circuits that the statute of limitations in TILA is subject to equitable tolling. Consequently, the district court erred in dismissing the Ellises’ claim for lack of jurisdiction.
2. Assignee Liability
Although we find that TILA is subject to equitable tolling, thus giving the district court jurisdiction, we need not reach the question of whether equitable tolling applies to the facts of this case because we conclude that, as an assignee, GMAC is not liable for the alleged TILA violations. The Act applies •to every consumer credit contract, including those between buyers and sellers as well as those between buyers and third-party financing agents including mortgage brokers, credit card companies and the like. In this lawsuit, the seller, Royal, was not sued. Thus, we are concerned only with whether GMAC, the assignee of the contract between Royal and the Ellises, is liable under the statute.
TILA has specifically addressed the liability of assignees under the Act and provides that:
[ejxeept as otherwise specifically provided in this subehapter, any civil action for a violation of this subchapter or proceeding ... which may be brought against a creditor may be maintained against any assign-ee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary_ [A] violation apparent on the face of the disclosure statement includes but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.
15 U.S.C. § 1641(a). At the same time, in regulations set forth in 16 C.F.R. § 433.2 (1998), the Federal Trade Commission (“FTC”) requires that every consumer credit contract treating the sale or lease of goods or services contain the following language in bold type:
NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY OF THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
GMAC was clearly a “holder” of the Ellis-es’ credit contract, which would seem to suggest that a TILA cause of action could lie against GMAC. GMAC contends, however, that the holder notice language appears in the contract only because it is required by the FTC and therefore is subordinate to the statutory limitation of liability set forth in 15 U.S.C. § 1641(a). Consequently, because the alleged violation was not apparent on the face of the disclosure document, GMAC is not liable under § 1641(a).
*709 The Ellises concede that “[r]egulations cannot trump the plain language of statutes.” Robbins v. Bentsen, 41 F.3d 1195, 1198 (7th Cir.1994).[5] They maintain, however, that even if § 1641(a) limits liability, parties can still agree to waive the protections of the statute and assume greater liability than the law requires. They assert that in this ease GMAC’s intent to assume greater liability is manifested by the above quoted language in the contract and argue that this interpretation is the only way to give any meaning to the language in the contract.
While it is certainly true that parties can waive statutory protections and assume liabilities not required by law,[6] we cannot conclude that GMAC has done so here. The only evidence of GMAC’s purported intent to relinquish TILA’s protections is the language that the FTC mandates be inserted into every consumer credit contract. See 16 C.F.R. § 433.2. We agree with the Seventh Circuit in Taylor v. Quality Hyundai, Inc., 150 F.3d 689 (7th Cir.1998), that this holder notice language is part of the contract by force of law and “must be read in light of other laws that modify its reach.” Id. at 693. Adhering to this principle does not render the contract language meaningless. As the Taylor court recognized, the provision continues to fill a valuable role by reiterating the right of buyers to withhold payment from sellers or assignees, if the cars they purchased turn out to be lemons. Id.. See also Maberry v. Said, 911 F.Supp. 1393, 1402 (D.Kan.1995) (FTC holder language permits consumers to defend against a creditor suit for payment of an obligation by raising a valid claim against the seller as a setoff); Hoffman v. Grossinger Motor Corp., No. 96 C 5362, 1997 WL 793316 (N.D.Ill. June 27, 1997). Like Taylor, we conclude that the language required by the FTC regulation cannot override the express language of TILA in which Congress speeifi-eally decided that assignee creditors will only be liable for TILA violations that are apparent on the face of the disclosure statement.
Thus, the language in the contract required by the FTC regulation standing alone does not suffice to subject GMAC to liability. Although GMAC could contract, as the Ellis-es suggest, to assume greater liability than the statute requires, there is no .evidence in this case to suggest or indicate that the insertion of the regulatory language into.the contract resulted from bargaining or agreement by the parties to reflect such a voluntary and intentional assumption of liability. Accordingly, we conclude that under § 1641(a), GMAC can be liable only for violations that are apparent on the face of the disclosure statement.
The Ellises maintain, nonetheless, that the misrepresentation of the warranty cost was sufficiently “apparent on the face” of the disclosure statement to warrant liability. We find this contention equally unconvincing. . The Ellises argue that since GMAC issued the checks and credits to “Mechanic” in payment for the warranty and that related loan documents reveal the true cost of the warranty as well as the amounts paid to the parties, the discrepancy between the amount supposedly paid to “Mechanic” and the amount actually paid by GMAC reflected a violation apparent on the face of the documents. Under the Ellises’ own argument, however ¡ we would need to resort to evidence or documents extraneous to the disclosure statement. This the plain language of the statute forbids us to do. As the Seventh Circuit noted, such an interpretation of TILA would; “impose a duty of inquiry on financial institutions that serve-as assignees. Yet this is the very kind of duty that the statute precludes, by limiting the required inquiry to defects that can be ascertained from the face *710 of the documents themselves.” Taylor, 150 F.3d at 694.
For the foregoing reasons, we hold that the statute of limitations set forth in TILA, 15 U.S.C. § 1640(e) is not jurisdictional and therefore may be subject to equitable tolling. However, because GMAC, as an assignee, is not liable under TILA for the violations alleged here, the district court’s dismissal of the complaint is AFFIRMED.

. 15 U.S.C. § 1640(e) stales in relevant part: “[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.”

. We note in passing that the D.C. Circuit addressed this issue in dicta in Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1039-40 & n. 4 (D.C.Cir.1986). Hardin did not involve TILA at all, but was rather about the limitations provisions of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et. seq. (RESPA). In a digression discussing TILA, the Hardin court opined that the 1980 amendments to TILA providing a recoupment defense to collection actions brought more than one year from the date of the violation indicate Congress’ intent that TILA be jurisdictional. See Hardin, 797 F.2d at 1039-40. However, among other things, the Hardin court *707 assumed that recoupment was always permitted prior to the 1980 amendment, when there was actually considerable disagreement on this issue. See Kerby, 992 F.Supp. at 796-97 (discussing Hardin and listing pre-1980 cases on both sides of the recoupment issue). See also Lawyers Title Ins. Corp., 118 F.3d at 1166-67 (RESPA case citing reasoning of King and TransOhio and declining to follow Hardin).

. 15 U.S.C. § 2802(a) of the PMPA states:
Except as provided in subsection (b) ... and section 2803 of this title, no franchiser engaged in the sale, consignment, or distribution of motor fuel in commerce may—
(1) terminate any franchise ... prior to the conclusion of the term, or the expiration date, stated in the franchise; or
(2) fail to renew any franchise relationship (without regard to the date on which the relevant franchise was entered into or renewed).

. This court adopted as binding precedent the decisions of the former Fifth Circuit prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

. See Mohasco Corp. v. Silver, 447 U.S. 807, 825, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) (agency interpretation of statute cannot supersede language chosen by Congress); S.J. Groves & Sons, Co. v. Fulton County, 920 F.2d 752, 764 (11th Cir.1991) (regulations must not be unauthorized, or inconsistent with the statute that authorizes them); United States v. Gordon, 638 F.2d 886, 888 (5th Cir., Mar.5, 1981) ("Whatever effect [an] agency regulation may have under other circumstances, it cannot supersede a statute applicable to those present here.”).

. See, e.g., Northside Iron & Metal Co., Inc. v. Dobson & Johnson, Inc., 480 F.2d 798, 800 (5th Cir. July 5, 1973) (bank may waive protections offered by statute, but to do so it must demonstrate voluntary and intentional relinquishment or abandonment of privilege).