Shirley CANADAY, et al., Plaintiffs,

v.

HOUSEHOLD RETAIL SERVS., INC., et al., Defendants.

No. CIV.A.95–D–045–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 24, 2000.

Julie S. Elmer, Bradley, Arant, Rose & White, LLP, Birmingham, AL, John E. Goodman, Bradley, Arant, Rose & White, LLP, Birmingham, AL, Michael D. McKibben, Bradley, Arant, Rose & White, LLP, Birmingham, AL, for Household Retail Servs., Inc.

Charles Keith Hamilton, Bainbridge, Mims, Rogers & Smith, Birmingham, AL, for Household Retail Servs., Inc., Household Intern., Household Bank, IL.

Brian R. Hinton, Bradley, Arant, Rose & White, LLP, Birmingham, AL, for Houshold Intern., Household Bank, IL.

Home Video, Inc., Douglasville, GA, pro se.

Norman Jetmundsen, Jr., Bradley, Arant, Rose & White, LLP, Birmingham, AL, for Household Retail Servs., Inc., Household Bank, FSB, Household Intern., Household Bank, IL.

Lynn W. Jinks, III, Jinks, Daniel, Crow & Seaborn, LLC, Union Springs, AL, Paul Kilpatrick, Pope, McGlamry, Kilpatrick & Morrison, Columbus, GA, Angela L. Kimbrough, Law Offices of Angela L. Kimbrough, Eutaw, AL, C. Knox McLaney, III, McLaney & Associates, Montgomery, AL, William U. Norwood, Pope, McGlamry, Kilpatrick & Morrison, Atlanta, GA, C. Neal Pope, Pope, McGlamry, Kilpatrick & Morrison, Columbus, GA, Teresa P. Tomlinson, Pope, McGlamry, Kilpatrick & Morrison, Columbus, GA, for plaintiffs.

Andrew J. Noble, III, Bradley, Arant, Rose & White, LLP, Birmingham, AL, for Household Retail Servs., Inc., Household Bank FSB, Houshold Intern.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is a Motion To Reconsider Summary Judgment Ruling, which

was filed by Defendant Household Retail Services, Inc. ("HRSI" or "Defendant") together with a supporting brief on August 17, 2000.[1] Ms. Canaday, as administratrix of her father's estate and on behalf of a class of similarly situated parties, filed a Response on September 5, 2000. Defendant then filed a Reply on September 13, 2000. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's Motion is due to be granted.

## I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1332 (diversity jurisdiction). Neither party contests personal jurisdiction or venue.

## II. STANDARD FOR RECONSIDERATION OF SUMMARY JUDGMENT

■ Because the denial of a motion for summary judgment is an interlocutory order, the trial court may reconsider or reverse its decision for any reason it deems sufficient. *See Bon Air Hotel, Inc. v. Time*, 426 F.2d 858, 862 (5th Cir.1970) ("the court at any time before final decree" can "modify or rescind" summary judgment order) (quoting *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88, 42 S.Ct. 196, 66 L.Ed. 475 (1922)).[2] The standard remains the same: A court considering a motion for summary judgment must construe the evidence and make factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is entered only if it is shown "that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). This determination involves applying substantive law to the substantive facts that have been developed. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence developed. *See id.* at 248, 106 S.Ct. 2505; *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the non-moving party, which "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An action will be dismissed when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *See id.* at 587, 106 S.Ct. 1348.

## III. FACTUAL BACKGROUND

The sole question is whether HRSI is liable for violating the Truth in Lending Act ("TILA") by failing to disclose certain information required in certain types of credit transactions. Because the court has presented its factual findings in two previous opinions, it only briefly summarizes the relevant facts here.

1. On August 5, 1996, the court denied HRSI's motion for summary judgment. That opinion, *Perry v. Household Retail Servs., Inc.*, 953 F.Supp. 1370 (M.D.Ala.1996), is referred to herein as *"Perry I "*.

2. The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

The story begins with Best Reception Systems, Inc., which sells satellite dishes and accessories through a network of distributors and dealers, including Home Video Electronics, Inc. More than six years ago, a salesman with connections to Home Video sold a dish and some equipment to Mr. Shelly Perry, who lived in a mobile home with his daughter, Ms. Shirley Canaday. The salesman told Mr. Perry that he could apply for credit by signing a standardized Credit Application and Retail Installment Credit Agreement,[3] which would allow him to purchase the satellite on a monthly credit plan. The salesman contends that he also told Mr. Perry and Ms. Canaday that they would receive a credit card in the mail as part of the credit package. The card then could be used toward additional purchases or to activate additional channels. *See Perry I*, 953 F.Supp. at 1373–74.

The Agreement was five pages in length. It consisted of a one-page application section and an accompanying four-page disclosure form. The application section, on its face, clearly identifies Home Video as the "Seller" of the credit account. (Am. Compl. ¶ 14; Reply Ex. A.) The accompanying Retail Installment Credit Agreement, on its face, clearly states that the agreement is between Buyer (Mr. Perry) and Seller (Home Video). The last page of the Retail Installment Credit Agreement also clearly states that the agreement may be sold to HRSI at any time.[4] (Spec.Evid.Submiss.Ex. A.)

Ms. Canaday signed the Credit Application on behalf of her father.[5] He was approved for credit the same day.[6] The dish arrived a few days later, along with a private label credit card called the "Powerline Card," which was issued by HRSI. (Am. Compl. ¶ 16; Wodrich Aff. ¶¶ 4–5.) Ms. Canaday also received a statement from HRSI setting forth Mr. Perry's account balance and a schedule of monthly payments towards the satellite dish. (Am. Compl.¶ 17.) Because it is clear from the face of the Retail Installment Credit Agreement that Home Video was the seller of the credit account, Best Reception and Home Video assigned Mr. Perry's contract to HRSI either at the same time it was signed or some time immediately thereafter.[7] (Spec.Evid.Submiss.Ex. A.)

Essentially, Mr. Perry's credit had been arranged through an elaborate network implicating HRSI, Household Bank, Best Reception, and Home Video. HRSI and Household Bank were assignees of accounts originally held by various Best Reception dealers and distributors, including Home Video. The Powerline Card purported to be a revolving credit card for purchases of products and services only from Best distributors. *See Perry I*, 953 F.Supp. at 1373–74.

As one of Best's executives explained in his deposition, the salesman would take a credit application from the customer. The application would be sent back to Home Video or other distributors. The distribu-

---

**3.** The court will refer to the combined Credit Application and Retail Installment Credit Application as the "Agreement" unless otherwise noted.

**4.** The agreement reads: "SALE OF THIS AGREEMENT. HOUSEHOLD RETAIL SERVICES, INC., 700 Wood Dale Road, Wood Dale, IL 60191, may buy this Agreement and all sales slips on my account." (Resp.Exh. D.)

**5.** Mr. Perry had a physical infirmity that made writing difficult.

**6.** In previous opinions, the court has noted that Ms. Canaday denies ever seeing, reading, or receiving the Retail Credit Installment

Agreement. (Canaday's Dep. at 77–78.) Neither party has raised this issue, either then or now.

**7.** As explained later, HRSI must be considered, as a matter of law, to be an assignee of the contract rather than the original creditor. Plaintiffs have attempted to create a factual dispute as to this issue. (Oldham Aff.; Zaccharias Aff.) However, it is legally impossible for HRSI to have been the original creditor. The court makes this finding after reviewing the face of the Credit Application, the Retail Installment Credit Agreement, and applicable statutes and regulations.

tor would send the credit application to Best, which would forward the information to HRSI. HRSI, then, would decide whether it was willing to issue credit and communicate back to Best, which would inform the dealer of HRSI's decision. As a result, the dealer would know whether the customer potentially had sufficient credit to consummate the transaction. (Zacharias' Dep. at 16–17.) In other words, Best, Home Video, and its dealers prearranged for the assignment of the credit instrument to HRSI. The transaction between satellite dealers and satellite purchasers was conditioned upon HRSI's acceptance of the credit application.

Ms. Canaday never paid HRSI any money.[8] HRSI then initiated debt collection efforts. This led Ms. Canaday to seek the assistance of counsel. That effort generated this lawsuit, which produced an order of nationwide class certification on March 29, 1998. *See Perry v. Household Retail Servs., Inc.,* 180 F.R.D. 423 (M.D.Ala. 1998). As noted previously, the court originally denied HRSI's motion for summary judgment with respect to HRSI's alleged violations of TILA. However, in light of the Eleventh Circuit's holding in *Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703 (11th Cir.1998), HRSI asks the court to reconsider the basis of its ruling in *Perry I.* Plaintiff responds that *Ellis* does not control this case. She also has presented a new theory upon which she seeks relief. Yet her arguments are to no avail. After careful review of the evidence and relevant law, the court finds that summary judgment is due to be granted.

## IV. DISCUSSION

Plaintiff's claim, in a nutshell, is that HRSI has violated TILA by failing to disclose certain information required in a closed-end credit arrangement. The federal regulation implementing TILA (known as Regulation Z) sets out two different types of credit that may be extended to consumers: open-end credit (the typical example being a credit card account)

and closed-end credit (such as a car loan or some similar retail installment contract). *See* Regulation Z, 12 C.F.R. §§ 226.5—226.17. Creditors are responsible under TILA for knowing the difference between the two types, and also for making the appropriate disclosures mandated by federal law. If a creditor makes open-end disclosures in a transaction that is appropriately characterized as closed-end, then it has violated TILA regardless of whether it has acted in good faith. *See* 15 U.S.C. § 1640(c).

Plaintiff's position throughout this litigation has been that the credit her father received to buy satellites was closed-end, even though HRSI said it was open-end and gave open-end disclosures. (Am. Compl.¶¶ 22–49.) The preliminary issue, however, is whether HRSI can be considered a creditor for TILA purposes at all. Plaintiff argues that HRSI is liable as either: (1) the assignee of the Agreement; (2) a card issuer; (3) an agent of a card issuer; or (4) the original creditor. Defendant has moved for summary judgment with respect to each of these possibilities. The court agrees with Defendant and finds that summary judgment is due to be granted.

### A. *Liability as Assignee*

HRSI first argues that as an assignee it can be liable only for TILA violations that were apparent on the face of the Agreement between Plaintiff and Home Video. TILA has specifically addressed the liability of assignees. The Act provides that:

[e]xcept as otherwise specifically provided for in this subchapter, any civil action for a violation of this subchapter or proceeding ... which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary.... [A] violation apparent

---

**8.** Mr. Perry has passed away since this case was filed.

on the face of the disclosure statement includes but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

15 U.S.C. § 1641(a).

█ Plaintiff does not argue that the disclosure form "does not use the terms required ... by this subchapter." *Id.* Rather, she seeks to avoid summary judgment by arguing that the jury should first determine whether the satellite loan could rightfully be classified as open-end. If the loan was closed-end (not open-end) and Home Video failed to give closed-end disclosures, Plaintiff argues, then the jury should be able to determine whether that TILA violation was apparent on the face of the Agreement. In Plaintiff's own words, "even if Household was an assignee, a question of fact exists as to whether Household could have determined from the face of the disclosure statement that the required TILA disclosures had not been made." (Resp. at 8.) The court disagrees.

The Eleventh Circuit rejected a similar argument in *Ellis.* The plaintiffs in *Ellis,* 160 F.3d at 705, contended that TILA had been violated because, when they purchased a car, the dealer did not disclose to them that a portion of the amount shown on the disclosure statement as being paid to a third party was in fact being retained by the car dealer. The Court, however, held that this discrepancy was not apparent on the face of the agreement. Therefore, it dismissed the claim against GMAC, which was an assignee of the credit agreement between the plaintiffs and the car dealer. *See id.* at 708–10. According to the Court: "Under the Ellises' own argument ... we would have to resort to evidence or documents extraneous to the disclosure statement. This the plain language of the statute forbids us to do." *Id.* at 709.

The court finds that *Ellis* controls this case's outcome. The issue is whether HRSI should have been able to tell from the face of the document that the loans extended by Home Video were closed-end rather than open-end. Loans are classified as closed-end if the original creditor does not "reasonably contemplate[ ] repeated transactions" with the consumer. 12 C.F.R. §§ 226.2(a)(10), (20). It is quite difficult for an assignee to determine the original creditor's intentions and contemplations. In order to understand the assignor's aims and goals, the assignee would have to obtain myriad information about the assignor's business practices, marketing efforts, customer bases, and so forth. *See Benion v. Bank One, Dayton, N.A.,* 144 F.3d 1056, 1058–59 (7th Cir.1998). The assignee could not hope to obtain this information other than by consulting documents or evidence other than the credit agreement. If an assignee had to seek out this information, TILA effectively would impose a duty of inquiry upon financial institutions that serve as assignees. Yet, as other courts have noted in rejecting such an interpretation of 15 U.S.C. § 1641(a), "this is the very kind of duty that the statute precludes, by limiting the required inquiry to defects that can be ascertained from the face of the documents themselves." *Green v. Levis Motors, Inc.,* 179 F.3d 286, 295 (5th Cir.1999) (quoting *Taylor v. Quality Hyundai, Inc.,* 150 F.3d 689, 694 (7th Cir.1998)).

Therefore, the court finds unpersuasive Plaintiff's claim that HRSI should have known from the face of the Agreement that Home Video was erroneously offering open-end loans. The court stresses that Plaintiff has not pointed to any other apparent defects in the disclosure statement. The Eleventh Circuit has not attempted to define precisely what types of defects are facially apparent, and TILA does not provide an exhaustive list. *See* 15 U.S.C. § 1641(a) (list of violations "includes, but is not limited to ...."). The Seventh Circuit has surmised that violations might include "facial irregularities, such as statements that are illegal, impossible, or in conflict with other terms." *Taylor,* 150 F.3d at

694. Plaintiff, however, has not made such a claim. Similarly, Plaintiff has not argued that the Agreement "does not use the terms" required by TILA, 15 U.S.C. § 1641(a), and the court cannot manufacture an argument on her behalf. Thus, even assuming that HRSI may have been intimately aware of Home Video's business practices, assignee liability cannot be stretched to include HRSI based on the apparent defects that Plaintiff has alleged. *See Ellis,* 160 F.3d at 709; *Green,* 179 F.3d at 294–95; *Taylor,* 150 F.3d at 694–95. *Cf. Marcano v. Northwestern Chrysler–Plymouth Sales, Inc.,* 550 F.Supp. 595 (N.D.Ill. 1982) (applying TILA prior to statutory revisions that eliminated liability for assignees with knowledge of original creditor's operations). Therefore, Defendant's motion for summary judgment is due to be granted to the extent that Plaintiff argues for assignee liability.

### B. *Liability as Card Issuer*

■ Plaintiff also seeks to avoid summary judgment by arguing that HRSI is not an assignee but a creditor in its own right. Plaintiff believes that Regulation Z defines as "creditor" anyone who issues a credit card in either an open-end transaction, *see* 15 U.S.C. § 1602(f), or a closed-end transaction, *see* 12 C.F.R. § 226.2(a)(17)(iv). Because HRSI distributed the Powerline Card, Plaintiff feels that HRSI can be considered a creditor. The court disagrees.

As a general rule, the "creditor" is "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." 15 U.S.C. § 1602(f). However, TILA also provides that, "in the case of an open-end credit plan involving a credit card, the card issuer and any person who honors the credit card and offers a discount which is a finance charge are creditors." *Id.* In any event, as the plain language of the statute dictates, the transaction must be open-end for the card issuer to be considered a creditor. In this case, although Plaintiff's initial Complaint alleged that Defendant failed to provide disclosures required by TILA in connection with open-end credit accounts, all of the claims asserted in her Amended Complaint are based on the allegation that her father's account did not qualify as an open-end account, and that he should have received closed-end disclosures. The Amended Complaint never makes any allegations with respect to improper open-end disclosure. Indeed, the parties seem to agree that HRSI's disclosures met Regulation Z's requirements for open-end credit arrangements.

The court rejects Plaintiff's contention that HRSI can be considered a creditor on the grounds that it issued a charge card for credit that, while nominally open-end, should really be classified as closed-end. At the outset, the court notes that Plaintiff's pleadings could be read in either of two ways. On one hand, they might suggest that HRSI and Home Video were joint creditors. On the other hand, they might suggest that the parties can both be treated as creditors even if they were not joint creditors. Thus, the court considers both possible arguments in turn.

The most likely interpretation of Plaintiff's pleadings is that she feels that Regulation Z's definition of "creditor" includes "any card issuer that extends closed-end credit that is subject to a finance charge or is payable by written agreement in more than 4 installments." 12 C.F.R. § 226.3(a)(17)(iv). Plaintiff believes that HRSI is a "creditor" because it issued the Powerline Card to Home Video's customers. Thus, she argues that HRSI should not be shielded from liability as an assignee. *See* 15 U.S.C. § 1641(a).

■ The problem with this argument is that it confuses Regulation Z's definition of who may qualify as a creditor in any given transaction with TILA's guidelines for identifying the creditor in the particular transaction at issue. Regulation Z was promulgated by the Federal Reserve Board. While the agency's guidelines are entitled to great weight, *see Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566–

69, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), they must be read consistently with the language of TILA, a statute which has been enacted by Congress. *See Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 68 L.Ed.2d 744 (1981) (per curiam); *Ellis,* 160 F.3d at 709 ("regulations cannot trump the plain language of statutes.") As a general rule, TILA clearly provides that the creditor in a particular transaction is the "person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." 15 U.S.C. § 1602(f). The only time that a "creditor" can be someone other than "the person to whom the debt ... is initially payable" is if the credit is open-end. *Id.*

As noted previously, if HRSI extended open-end credit, then it clearly gave the appropriate open-end disclosures required under TILA. But the whole thrust of Plaintiff's argument is that the credit extended in her father's satellite purchase was not open-end. Either way, Plaintiff's argument must fail. If the credit extended was not open-end, and if HRSI was an assignee of the original agreement that distributed the card after a prior assignment, *see infra,* then HRSI cannot be a creditor. A subsequent card issuer is a creditor only "in the case of an *open-end credit plan* involving a credit card." *Id.* (emphasis supplied). In all other cases, the card issuer is an assignee that is shielded from liability stemming from poor disclosures on the papers provided at the point of the original transaction. *See id.* § 1641. Thus, the court finds that while HRSI distributed the Powerline card after it was assigned the credit agreement, it is not a "creditor" as defined in TILA. *See id.* § 1602(f).

In addition, in this case, there is no evidence suggesting that HRSI and Home Video were jointly the initial creditors in this transaction. Commentators have observed that, "in order for there to be 'multiple creditors' in a consumer credit transaction under [TILA], the evidence of indebtedness would have to be payable to multiple entities extending credit in the consumer credit transaction itself." 2 RALPH C. CLONTZ, JR., TRUTH–IN–LENDING–MANUAL, ¶ 10.08, at 10–52 (rev. ed.) (interpreting 15 U.S.C. §§ 1602(f), 1640(a), and 12 C.F.R. § 226.2(a)(17)). But here, as explained in Part IV.D, the sole creditor is Home Video. HRSI is merely an assignee. It is axiomatic that one cannot be both an assignee and a creditor. *See Meyers v. Clearview Dodge,* 539 F.2d 511, 515 (5th Cir.1976). Accordingly, as an assignee, HRSI is shielded against liability from Home Video's disclosures by virtue of TILA's safe harbor provisions. *See* 15 U.S.C. §§ 1631(b), 1640(a), 1641(a). Therefore, the court finds that HRSI does not meet TILA's definition of "creditor" simply because it issued the Powerline Card some time after it was assigned Mr. Perry's account. (Wodrich Aff. ¶¶ 4–5; Oldham Aff.)

In the alternative, even assuming that Plaintiff is correct—and that both HRSI and Home Video are creditors—the court still finds that liability cannot extend to HRSI. Plaintiff is seeking relief because she claims a jury could find that Mr. Perry should have received closed-end disclosures. Thus, the court must inquire as to what TILA says about closed-end credit. TILA provides that, "[i]f a transaction involves more than one creditor or lessor, only one creditor or lessor shall be required to make the disclosures." 15 U.S.C. § 1631(b). Moreover, "[w]ith respect to any failure to make disclosures required under this part ... liability shall be imposed only upon the creditor required to make disclosure, except as provided in section 1641 of this title." *Id.* § 1640(a).

The court finds that a creditor is not required to disclose unless the debt is initially payable to that creditor on the face of the agreement. The court also finds that one creditor is not liable for another's errant disclosures. *See* CLONTZ, *supra,* ¶ 10.08 at 10–52. In transactions involving multiple creditors,

according to Regulation Z, "only one set of disclosures shall be given and the creditors shall agree among themselves which creditor must comply with the requirements that this regulation imposes on any or all of them." 12 C.F.R. § 226.17(d). The creditor who agrees to furnish the disclosure statements is the sole creditor who is liable for them. *See* CLONTZ, *supra* ¶ 10.08 at 10–52.

Agency deference and public policy considerations justify this conclusion. Congress gave the Federal Reserve Board the power to "specify which creditor or lessor shall make the disclosures" required under TILA. 15 U.S.C. § 1631(b). The agency, with its vast repository of expertise and knowledge, was no doubt aware that 15 U.S.C. § 1640(a) limited liability to the disclosing creditor. Nevertheless, the agency gave multiple creditors complete autonomy and discretion in determining which one of them would be the disclosing party. The agency also chose not to promulgate any guidelines spreading liability among the various parties. When dealing with a complex statute like TILA, it is best for the court to trust the administering agency to develop appropriate implementing guidelines, rather than twist the language of the statute beyond its plain meaning. Therefore, even if HRSI and Home Video can both be considered creditors, the court finds that TILA does not allow HRSI to be liable in the event that Home Video's disclosures are found improper. Accordingly, Defendant's motion for summary judgment is due to be granted to the extent that Plaintiff argues for liability on the grounds that HRSI is a "card issuer."

## C. *Liability as Agent*

Plaintiff's next argument is that HRSI could be considered the agent of a card issuer. This argument need not detain the court long. TILA provides that "[t]he term 'card issuer' means any person who issues a credit card, or the agent of such person with respect to such card." 15 U.S.C. § 1602(n); *see also* 12 C.F.R. Pt. 226,

Supp. I, § 226.2 (defining agent). Although agency issues can involve complex issues of fact, this case is not so complex. Plaintiff provides no evidence that Home Video issued the Powerline Card. All the evidence, rather, suggests that HRSI issued the card itself. (Wodrich Aff. ¶¶ 4–5; Spec. Evid. Submiss. Ex. B.)

The party opposing summary judgment must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citation omitted). Plaintiff has not done so. Accordingly, Defendant's motion for summary judgment is due to be granted to the extent that Plaintiff argues for liability on the grounds that HRSI is an agent of a card issuer.

## D. *Liability as the Original Creditor*

■ Finally, the court turns to the argument that HRSI was the original creditor, rather than an assignee of the Agreement between Home Video and Mr. Perry. Plaintiff argues that the disclosure form is vague and ambiguous. She contends that the Agreement "made the subject of this litigation defies [HRSI's] position that it is a mere assignee of the plaintiff's financial transactions." (Spec. Evid. Submiss. at 8–9.) She believes a jury should read the Agreement and determine whether HRSI is an assignee or the creditor to whom the account was originally payable on its face.

The court is somewhat puzzled by Plaintiff's argument, which was never raised until this instant Motion. In fact, in her Amended Complaint, Plaintiff cites to the Agreement and states that the credit application was "part of an application package for financing and warranty from Best"—not HRSI.[9] (Am.Compl.¶ 14.) If Plaintiff felt that the disclosure form was ambiguous, then nothing prevented her from seeking relief on this precise ground. After all, TILA disclosures must be made

9. Home Video is one of Best's distributors.

in a clear and conspicuous manner. *See* 12 C.F.R. § 226.17(a). *Cf. In re Whitley,* 772 F.2d 815 (11th Cir.1985) (per curiam) (imposing liability in response to claim of ambiguous disclosure). For whatever reason, Plaintiff elected not to make this argument. It is not the court's position to speculate why. Regardless, the court finds that the disclosure form clearly identifies Home Video as the original creditor and HRSI as the assignee. Thus, the court finds that HRSI's motion for summary judgment is due to be granted to the extent that Plaintiff alleges that HRSI is the original creditor in this relationship.

The Agreement consists of two parts: (1) a one-page Credit Application; and (2) a four-page Retail Installment Credit Agreement. On the face of the Credit Application, Home Video is identified as the "Seller" of a satellite credit account. No other party is identified as the seller. (Reply Ex. A.) On the face of the Retail Installment Credit Agreement that accompanied the Credit Application is the sentence: "SALE OF THIS AGREEMENT. HOUSEHOLD RETAIL SERVICES, INC. ("HRS") Home Office, 700 Wood Dale Road, Wood Dale, IL 60191, may buy this Agreement and all slips upon my account." (Mot.Exh. D.) Thus, from the face of the integrated Agreement, it is clear that Home Video sold Mr. Perry a satellite credit account, and that the parties granted HRSI permission to buy the Agreement.

By definition, the creditor is the person to whom, on the face of the agreement, "the debt arising from the consumer credit transaction is initially payable." 15 U.S.C. § 1602(f). The creditor also is the party that is required to disclose information to consumers. *See* 12 C.F.R. §§ 226.5(a)(1), 226.17(a)(1). In this case, the Agreement was between "Buyer" (Mr. Perry) and "Seller" (Home Video). Home Video is identified on the face of the Agreement as the sole seller of credit for satellite purchases. Home Video also is the sole party that provided the disclosure statements. Therefore, the court finds that Home Video was the sole creditor.

This finding is supported by the fact that the Agreement also clearly states that it could be purchased by HRSI. If HRSI could buy the Agreement, then HRSI was not the seller of the Agreement. A party cannot purchase something from itself. If HRSI could purchase the Agreement at a later date, and therefore was not the seller of the Agreement, then it follows that HRSI could obtain an interest in the Agreement only after a subsequent assignment. Yet in no circumstance could an assignee be a creditor. *See Meyers,* 539 F.2d at 515. Any debt flowing to an assignee does so only after being initially payable to some other party, even if the assignment is immediate or simultaneous with the contract's execution. *See Ellis,* 160 F.3d at 705 (analyzing a simultaneous credit assignment).

These principles must guide any interpretation of the Agreement between the parties. Nevertheless, Plaintiff continues to read the Agreement as implying that HRSI is the original creditor. She maintains this position because, while the Agreement designates Home Video as "you," certain clauses direct Mr. Perry to deal with parties designated as "we" or "us" rather than "you." Some clauses include: "MONTHLY BILLING STATEMENT: We will send you a billing statement after each monthly billing cycle . . . ." (Mot.Ex. D.) "To terminate [credit card] authority, you must retrieve the Card from the previously authorized user and return it to us . . . ." (*Id.*) Or, "You can cancel or close your Account by writing to us at Household Retail Services . . . ." (*Id.*) These references, Plaintiff suggests, indicate that HRSI is the original creditor rather than an assignee.

The court disagrees. All such references, as well as others like them, inform consumers of how they should contact Home Video or HRSI after the Agreement has been assigned. It is clear that HRSI and Home Video contemplated simultaneous or subsequent assignment. It is equally clear that HRSI was an assignee

and not the original creditor. In these situations, which are common in the credit industry, the Official Federal Reserve Board Staff Commentary to Regulation Z provides that, "[i]f an obligation is initially payable to one person, that person is the creditor even if the obligation by its terms is simultaneously assigned to another person." *Riviere v. Banner Chevrolet, Inc.,* 184 F.3d 457, 460 (5th Cir.1999) (quoting 12 C.F.R. Pt. 226, Supp. I, § 226.2(a)(17)(i)). The Official Staff Commentary provides an example perfectly applicable to the facts of this case:

> An auto dealer and a bank have a business relationship in which the bank supplies the dealer with credit sale contracts that are initially made payable to the dealer and provide for the immediate assignment of the obligation to the bank. The dealer and purchaser execute the contract only after the bank approves the creditworthiness of the purchaser. Because the obligation is initially payable on its face to the dealer, the dealer is the only creditor in the transaction.

12 C.F.R. Pt. 226, Supp. I, § 226.2(a)(17)(i)(2).

In this case, the face of the agreement indicates that the obligation initially is payable to Home Video, the seller of the credit. HRSI, then, can only be an assignee of the contract. It cannot be the initial creditor. Admittedly, Plaintiff has produced two affidavits stating that Home Video did little more than transfer information via computer to HRSI, and that HRSI was the creditor in fact, though not in name. (Oldham Aff.; Zaccharias Aff.) But that underscores the problem with Plaintiff's argument: it requires the court to disregard the plain language of the document itself. Defendant's motion for summary judgment is due to be granted to the extent that Plaintiff argues that HRSI was the original creditor in the transaction.

## V. ORDER

Upon reconsideration of the court's Memorandum Opinion And Order, entered August 5, 1996, it is ORDERED that Household Retail Services, Inc.'s Motion For Summary Judgment be and the same is hereby GRANTED. Furthermore, it is CONSIDERED and ORDERED that Plaintiff's claim against Defendant Household Retail Services, Inc., be and the same is hereby DISMISSED.