[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 20-13319

————————————

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY,
Foreign Corporation,
STATE FARM FIRE & CASUALTY COMPANY,
Foreign Corporation,

Plaintiffs-Appellees,

versus

BEATRIZ MUSE, et al.,

Defendants-Appellants.

———————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cv-23125-RNS

———————————————

Before BRANCH, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

This appeal is about a scheme in which three healthcare clinics, individuals who owned or controlled those clinics, and the clinics' respective medical directors billed insurance companies for millions of dollars in services that were unlawfully rendered and non-compensable. Two entities—State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company—sued the defendants, alleging common law fraud, violations of the Florida's Deceptive and Unfair Trade Practices Act, and unjust enrichment. The district court granted summary judgment in favor of State Farm on its FDUTPA and unjust enrichment claims, awarding $2.9 million in damages for which the defendants were jointly and severally liable. Two sets of defendants appealed.

The first set of defendants includes several members of the Muse family and one of the clinics, Medical Wellness Services, Inc. They raise three issues: (1) whether the district court abused its discretion by considering only the portions of the record that they specifically cited; (2) whether genuine issues of material fact preclude

summary judgment; and (3) whether the district court erred in awarding damages to State Farm. Dr. Lorites, a medical director at one of the clinics, raises an additional issue. He argues that the district court erred in granting summary judgment because State Farm's claims against him are untimely.

We disagree with the first set of defendants and affirm the district court's summary judgment in favor of State Farm against the Muses and Medical Wellness Services, Inc. But we agree with Lorites that the district court should not have granted summary judgment against him. Accordingly, with the benefit of oral argument, we affirm in part and reverse in part.

## I.     BACKGROUND

Around two decades ago, Lazaro Muse went into business operating a healthcare clinic focused on treating individuals injured in automobile accidents. His business model involved billing insurers like State Farm under Florida's Personal Injury Protection ("PIP") Statute, which, prior to its repeal, required automobile insurers to provide PIP coverage to victims of car accidents without regard to fault. Lazaro later co-owned an office building that he rented to multiple "PIP clinics." One such PIP clinic hired him to serve as its administrator. In this role, Lazaro hired his sister, Beatriz, and trained her to operate a PIP clinic.

Years later, in 2007, Lazaro gave Beatriz seed money and a tenancy in his office building to form her own PIP clinic, Health & Wellness Services, Inc. ("H&W"). In 2009, with financial support

and guidance from Beatriz, Beatriz's husband, Noel Santos, formed another PIP clinic called Medical Wellness Services, Inc., ("MW"). In 2010, another associate of Lazaro formed another PIP clinic, Pain Relief Clinic of Homestead Corp. ("PR"). All three PIP clinics—H&W, MW, and PR—were Florida-licensed health care clinics that provided rehabilitative services to individuals injured in car accidents, for which they sought reimbursement from the individuals' insurers under Florida's PIP statute.

Though not an owner, Lazaro was deeply involved in the business of running the clinics. He served as a business consultant at all three clinics. He convinced Beatriz to hire Dr. Goldstraj as medical director at H&W. When Beatriz sold her ownership of H&W and transitioned to handling H&W's billing through a billing company she started herself, one of Lazaro's companies served as the billing company's registered agent. Lazaro's company also served as PR's registered agent. All three clinics used the accountant and healthcare consultant Lazaro recommended. Finally, Lazaro and Beatriz co-owned a massage therapy school that certified licensed massage therapists ("LMTs") to work at the PIP clinics. The only treatment providers employed by the clinics were LMTs.

Each clinic employed a medical director who supervised the treatment administered at the clinics. Under Florida's Medical Director Statute, clinics are required to appoint medical directors who are then legally responsible for ensuring that treatments are

administered lawfully, that record-keeping obligations are met, and that billings are not fraudulent or unlawful. Fla. Stat. § 400.9935(1).

State Farm sued three sets of defendants. First, State Farm sued H&W, MW, and PR over payments for thousands of claims made to State Farm between 2007 and 2018. State Farm also alleged that the clinics unlawfully rendered services and provided services that were medically unnecessary. Second, State Farm sued members of the Muse family—Lazaro, Beatriz, and Noel Santos—whom it alleged owned, controlled, or did business with the clinics during the relevant period. Third, State Farm sued the current and former medical directors: Drs. Goldstraj and Franco at H&W; Drs. Carrasco and Coll at MW; and Drs. Lorites and Gomez-Cortes at PR. The complaint included claims of common law fraud, violations of the Florida Deceptive and Unfair Trade Practices Act, unjust enrichment, and a declaratory judgment claim regarding bills that had been submitted to State Farm by the clinics but not yet paid out.

State Farm moved for summary judgment against all defendants on its FDUTPA claims, its unjust enrichment claims, and its claim for declaratory relief, on the grounds that services rendered at the clinics were unlawful and non-compensable under the PIP statute. State Farm did not seek summary judgment on its common law fraud claims.

The district court granted State Farm's motion for summary judgment. As an initial matter, the district court found that many of State Farm's factual assertions stood unrebutted because the Muses and Lorites failed to cite record evidence that created a

genuine issue of material fact—including the report and testimony of the Muses' expert, Dr. Nicholas Suite. To the extent the defendants presented and properly cited record evidence, however, the district court considered it.

The district court then found that State Farm had presented sufficient undisputed evidence showing that services rendered at the clinics and billed to State Farm were unlawful and non-compensable. Specifically, the district court found that the defendants: (1) employed LMTs that performed services outside the scope of their license, (2) failed to comply with Florida record-keeping requirements, (3) gave invalid prescriptions, (4) and made insufficient efforts to collect co-payments and deductibles. The district court also found that Lorites failed to comply with his statutory duties to ensure services were lawfully rendered and billed. It awarded State Farm $2.9 million in damages for which the defendants shared liability—the court found each defendant jointly and severally liable for damages with which they were associated. It also granted declaratory relief, holding that the outstanding bills submitted to State Farm were non-compensable.

Lorites raised a statute of limitations defense, but the district court rejected it. Though more than five years had passed since Lorites had left his job as PR's medical director, the district court concluded that State Farm produced evidence proving that its claim against Lorites did not accrue until 2018—well within the statute of limitations. The district court therefore ruled that State Farm's claims against Lorites were timely.

The Muses (Lazaro, Beatriz, Noel Santos, and MW) and Lorites each filed motions for reconsideration. The district court denied them. The Muses and Lorites timely appealed.

## II.    STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*, 971 F.3d 1321, 1325 (11th Cir. 2020). Summary judgment is proper if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All evidence is viewed in the light most favorable to the non-movant. *Eres v. Progressive Am. Ins. Co.*, 998 F.3d 1273, 1278 n. 3 (11th Cir. 2021).

To survive summary judgment, the non-movant must rebut the movant's evidence with evidence sufficient to allow a reasonable jury to find facts in their favor. *See Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020). They must carry their burden with something "more than speculation or a mere scintilla of evidence." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1122 (11th Cir. 2014).

Finally, a district court's application of its own local rules is reviewed for abuse of discretion. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009).

## III.    DISCUSSION

We divide our discussion into four parts. First, we discuss whether the district court abused its discretion by considering only the portions of Dr. Suite's report and deposition that were cited with precision. Second, we discuss whether genuine issues of material fact preclude summary judgment in favor of State Farm against the Muses. Third, we discuss whether the district court erred in awarding State Farm $2.9 million in damages. Finally, we discuss whether the district court erred in concluding that State Farm's claims against Lorites were timely.

When the relevant events of this case occurred, Florida law required automobile insurers like State Farm to provide PIP coverage to victims of car accidents "for reasonable, necessary, related and lawful treatment, without regard to fault." *State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B & A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1163 (S.D. Fla. 2015) (citing Fla. Stat. §§ 627.730–627.7405). Covered medical benefits include "services and care that are lawfully provided, supervised, ordered or prescribed." Fla. Stat. § 627.736(1)(a)(1). An insurer "is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered." *Id.* § 627.736(5)(b)(1)(b). Furthermore, a "statement of medical services may not include charges for medical services of a person or entity that performed such services without possessing the valid licenses required to perform such services." *Id.* § 627.736(5)(d). An insurer is not required to pay a claim

that is "not substantially" compliant with this requirement. *Id.* § 627.736(5)(b)(1)(d).

### A.    The District Court Properly Applied Rule 56

The Muses hired Dr. Nicholas Suite to review samples of medical records kept at MW. The district court disregarded portions of Dr. Suite's report and testimony on the grounds that the Muses' briefing in opposition contained insufficiently precise citations to his materials. The Muses argue that the district court abused its discretion by "discarding" Dr. Suite's report and testimony and by failing to give them leave to amend their filings to provide more precise citations. We disagree.

We give "'great deference to a district court's interpretation of its local rules' and review a district court's application of local rules for an abuse of discretion." *Mann*, 588 F.3d at 1302. "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215 (11th Cir. 2014) (quoting *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1216–17 (11th Cir. 2009)).

The rule in question is Southern District of Florida Local Rule 56.1. The version of that rule in effect when State Farm filed its motion for summary judgment required that a statement of material facts "[b]e supported by specific references to pleadings,

depositions, answers to interrogatories, admissions, and affidavits on file with the Court." S.D. Fla. L.R. 56.1(a)(2) (Oct. 2019); *see, e.g.*, *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1343 (S.D. Fla. 2015). The requirement for "specific references" applied to statements of material facts accompanying both motions for summary judgment and any oppositions. S.D. Fla. L.R. 56.1(a). The Rule also stated that "[a]ll material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that movant's statement is supported by evidence in the record." S.D. Fla. L.R. 56.1(b) (Oct. 2019); *Lugo*, F. Supp. 3d at 1343. We have held that "failure to comply with local rule 56.1 is not a mere technicality. The rule is designed to help the court identify and organize the issues in the case." *Mann*, 588 F.3d at 1303.

The district court did not abuse its discretion in applying Local Rule 56.1. The Muses, in their opposition to State Farm's statement of material facts, failed to provide specific references to the record. Instead, they cited generally to Dr. Suite's entire report and deposition, which encompassed hundreds of pages of record material. In its order granting State Farm's motion for partial summary judgment, the district court explained that the "Muse Family Defendants' attempts to dispute State Farm's allegations either failed to cite to the record at all or cited to lengthy documents in their entirety." Furthermore, the district court considered the portions of Dr. Suite's report and testimony that the Muses cited with

precision. Accordingly, the district court did not abuse its discretion in handling Dr. Suite's evidence.

The Muses also argue that the district court should have *sua sponte* given them leave to amend their citations to comply with Rule 56.1. We disagree. When they filed their opposition brief in district court, the version of Rule 56.1 then in force did not provide time to cure a non-compliant filing. The Muses never sought leave to file a corrected opposition, even though State Farm raised the issue of imprecise citations in its reply briefing. For our part, we have never held that a district court must *sua sponte* give a non-compliant counseled party an extra opportunity to comply with a local rule. In other words, nothing required the district court to *sua sponte* give the Muses leave to amend their summary judgment briefs.

Where the Muses rebutted State Farm's statement of facts with imprecise references to Dr. Suite's entire report and deposition, the court was within its discretion to conclude that those facts were effectively "admitted" under its Local Rule 56.1.

### B.    *The District Court Properly Granted Summary Judgment in Favor of State Farm against the Muses*

The Muses argue that, even without Dr. Suite's testimony, other evidence creates genuine issues of material fact that should defeat summary judgment. We disagree and affirm summary judgment in favor of State Farm. We address each of the Muses' arguments in turn.

1. Summary judgment against Lazaro as a non-owner

The district court found that the Muse family members, including Lazaro, were direct participants in the PIP clinic scheme. In their opening brief, the Muses argue that Lazaro's affidavit and testimony establish that "he did not own any of the clinics," that he was "never an owner, part owner or silent owner of the three defendant clinics," and that he "merely 'provided consulting services'" to the clinics. State Farm responds that these assertions do not exculpate Lazaro from liability because FDUTPA liability hinges on participation, not formal ownership. We agree.

Based on Florida courts' interpretation of FDUTPA, State Farm need not show that Lazaro owned a clinic to prevail against him. The standard for liability under FDUTPA is whether someone is a "direct participant" in the deceptive acts. *See KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. Dist. Ct. App. 2008). Here, the evidence establishes that, although nominally titled a "consultant," Lazaro was deeply involved in the deceptive scheme and the management and operation of all three clinics. After spending years learning the PIP clinic business himself, he hired Beatriz and trained her to run a PIP clinic. He provided the seed money for Beatriz's clinic, H&W, and served as its landlord. He testified that he convinced Beatriz to hire Dr. Goldstraj as medical director at H&W. All three clinics used the accountant and healthcare consultant recommended by Lazaro. Lazaro's company served as the registered agent for Beatriz's billing company and for PR. Along with Beatriz, he co-owned the massage therapy school that placed LMTs

in the clinics. Finally, Lazaro testified that his consulting duties at the clinics encompassed "all aspects of the business." Under these unique facts, State Farm has shown that Lazaro was a direct participant in the scheme, despite his lack of a formal title. Accordingly, we affirm the district court's grant of summary judgment against Lazaro.

2. Services provided by LMTs outside the scope of their license

The district court found that LMTs at all three clinics performed treatments involving the use of physical devices that were outside the scope of their licenses, including mechanical traction, gait training, neuromuscular reeducation, and therapeutic exercises. The district court concluded that such treatments were unlawful and non-compensable. The Muses make several arguments on appeal, which all fail.

First, the Muses argue that the use of *any* physical devices "in aid of massage" falls within the scope of an LMT's license. They are incorrect. Florida law defines "massage" as "the manipulation of the soft tissues of the human body with the hand, foot, arm, or elbow, whether or not such manipulation is aided by . . . any electrical or mechanical device." Fla. Stat. § 480.033(3). Massage therapists may perform more advanced physical therapies involving the use of physical devices, provided that those devices are "a part of" or "incidental to" a massage. *Id.* at § 486.161(1); *see also State Farm Mut. Auto. Ins. Co. v. Universal Med. Ctr. of S. Fla., Inc.*, 881 So. 2d 557, 560 (Fla. Dist. Ct. App. 2004). The therapies at issue here involved the use of physical devices—for example, a treadmill for

gait training—not incidental to a massage and more akin to advanced physical therapy. The district court thus correctly determined that the LMTs operated outside the scope of their licenses.

Second, the Muses argue that the treatment provided by LMTs was compensable because, prior to a 2013 amendment, Florida's PIP statute did not require LMTs to be directly supervised by a medical doctor. They further contend that supervision was not actually required until 2020 when a Florida court ratified that interpretation of the statute in *Geico General Insurance Co. v. Beacon Healthcare Center. Inc.*, 298 So. 3d 1235 (Fla. Dist. Ct. App. 2020). Even if true, the point is irrelevant. The district court did not conclude that services rendered by the LMTs were unlawful or noncompensable due to lack of supervision. In fact, LMTs do not require supervision to perform services within the scope of their license. *See* Fla. Stat. §§ 480.031-0535, 480.033(8). The district court based its ruling on the fact that LMTs at the clinics performed therapies outside the scope of their license. Even if the services performed by LMTs were legal, the PIP statute flatly precludes reimbursement for LMTs providing advanced physical therapy services—which is what occurred here. *Geico General Insurance Co.*, 298 So. 3d at 1238.

Finally, the Muses argue that a jury could have found that, regarding the need for LMT supervision, Beatriz and Noel Santos "were operating [MW and H&W] under a misapprehension of the law, and while that might establish some type of liability . . . it is not equivalent to fraud as a matter of law." Again, even if true, this

is irrelevant. State Farm's fraud claims are not on appeal, and neither FDUTPA nor an unjust enrichment theory require proof of fraudulent intent for liability to attach. *See, Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000) (identifying whether a practice is deceptive under FDUTPA is an "objective test" and a "plaintiff need not prove the elements of fraud to sustain an action under the statute"); *Golden v. Woodward*, 15 So. 3d 664, 670 (Fla. Dist. Ct. App. 2009) (plaintiff alleging unjust enrichment claim need not establish defendant's fraud or misconduct).

3. Non-compliance with record-keeping requirements

The district court held that "the undisputed facts show the medical directors and the Clinics failed to comply with many of [Florida's record-keeping] requirements." The Muses challenge the district court's findings in several ways, all of which fail.

First, the Muses try several versions of the same argument: because they were not personally aware that the clinics' employees failed to keep adequate records, they are not liable for violating Florida's record-keeping laws. But again, the standard for liability under FDUTPA is not whether the Muses were engaged in fraudulent misconduct, but whether they directly participated in the dealings giving rise to the deceptive acts. *KC Leisure*, 972 So. 2d at 1073-74. If the clinics violated Florida record-keeping laws, then the treatments they provided were non-compensable, and they violated FDUTPA by representing otherwise to State Farm. The Muses are liable under FDUTPA if they participated directly in that scheme. And as we have already discussed, the record is replete

with unrebutted evidence of the Muses' participation in the scheme that supports the court's summary judgment.

Second, the Muses argue that the district court erred in holding Lazaro liable for record-keeping violations. The district court determined that Lazaro viewed patient records despite a lack of "any evidence or indication from the record that he was in any way authorized to do so: he is not a healthcare practitioner or involved in the patient's care or treatment." The Muses concede that Lazaro reviewed patient records without authorization, but argue that his actions do not expose him to liability because "[a] consultant taking a 'peek' at medical records at a clinic is not fraud." Again, State Farm's fraud claims are not on appeal. The Muses' argument concedes the point—Lazaro accessed patient records without authorization, violating the Florida statute. *See* Fla. Stat. § 456.057(7)(a), (c) ("[S]uch records may not be furnished to . . . any person other than the patient, the patient's legal representative, or other health care practitioners and providers involved in the patient's care or treatment, except upon written authorization from the patient.").

Finally, the Muses contend that there is a genuine issue of fact as to whether MW violated Florida's record-keeping requirements by failing to retain patient files for five years as required by Florida Administrative Code Rule 64B8-10.002(2). Even assuming the Muses are correct, MW's alleged failure to maintain records for five years was only one of the many ways it failed to comply with Florida's record-keeping requirements. State Farm presented unrebutted evidence of numerous other record-keeping failures,

including treatment plans that did not justify the treatment administered, treatment plans not including the amount of time or number of units for the services prescribed, x-ray results having no documented impact on patient treatment, and, of course, Lazaro's unauthorized accessing of patient records. This evidence amply supports the district court's conclusion that MW failed to adhere to its statutory record keeping obligations.

### 4. The defendants' failure to make good-faith efforts to collect co-payments and deductibles

The district court concluded that "the Clinics here, under the direction of the medical director defendants . . . failed to make any real effort to collect co-payments and deductibles." The Muses rely on testimony from both Beatriz Muse and Noel Santos to argue that they personally made efforts to collect co-payments and deductibles at H&W and MW, respectively. State Farm responds that the testimony from Beatriz and Noel is mostly consistent with their allegations and that overwhelming record evidence established that co-payments and deductibles were not collected. We agree.

Regarding the failure to collect payments at MW, the evidence marshalled by State Farm in support of summary judgment was overwhelming. State Farm offered affidavit testimony from MW's medical directors who *never saw* a patient pay a co-payment or deductible; Lazaro's admission that when he served as MW's business consultant he was unaware of any effort to collect co-payments or deductibles; Noel's admission that he did not know the

difference between a co-payment and a deductible; Noel's admission that MW never sent a bill to patients; and the fact that MW had no policies instructing staff on how to collect co-payments and deductibles. The Muses have failed to rebut State Farm's evidence with substantial evidence of their own. The only rebuttal they offer is Noel's testimony that he alone sought co-payments and deductibles from MW patients but had no records of any payments.

The Muses cite Beatriz's testimony as evidence that good faith collection efforts were made at H&W, but her testimony offers little support for that proposition. Beatriz testified that clinic patients owed a 20 percent co-payment for services rendered at H&W, but that she would only tell patients what they owed if they asked, and that she never mailed bills to patients' home addresses. She testified that she attempted to collect co-payments over the phone, but that patients would often avoid her calls, and that she had thrown out the call logs showing which patients she had called. She later testified that H&W did not "take any actions to collect deductibles." Lazaro also testified that he was unaware of any effort by any of the clinics to collect co-payments and deductibles. The medical director at H&W, Dr. Goldstraj, testified that he never saw co-payments and deductibles being collected and never heard them discussed.

On this issue, there is no genuine issue of material fact. The defendants failed to carry the burden of rebutting State Farm with something "more than speculation or a mere scintilla of evidence."

*Paylor*, 748 F.3d at 1122. Accordingly, the district court's grant of summary judgment for State Farm on this issue is affirmed.

### C.    *The District Court did not Err in Awarding Damages*

The Muses argue that no damages should be assessed against Lazaro at all, or against Beatriz for her conduct after she sold H&W in 2010. In support, their brief contains three short sentences of argument with no citations to law or facts. Because they have not supported their argument on this point, the Muses have abandoned the issue. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he . . . raises it in a perfunctory manner without supporting arguments and authority."). Furthermore, the Muses' argument—again—appears to be based on their mistaken belief that liability to State Farm hinges on ownership of the clinics. As explained above, this is not the case. FDUTPA only requires direct participation in the scheme.

### D.    *State Farm is not Entitled to Summary Judgment in its Favor against Lorites*

Lorites served as medical director at PR from 2010 to 2013. In his motion for summary judgment, Lorites argued that State Farm's FDUTPA and unjust enrichment claims against him were brought outside the applicable four-year statute of limitations. The district court held that State Farm provided sufficient evidence to invoke the doctrine of fraudulent concealment, concluding that Lorites made affirmative representations that services rendered at

PR were lawful and compensable in the invoices submitted to State Farm, when in fact they were not. The court held that State Farm was therefore not on notice of the defendants' scheme until July 2018, and that the claims it brought against Lorites were timely. On appeal, Lorites argues that State Farm's claims against him are untimely because there is insufficient evidence to support the district court's conclusion that he made affirmative misrepresentations to State Farm, or that State Farm could not have discovered its cause of action by exercising reasonable diligence. For the following reasons, we agree with Lorites in part and reverse the district court's grant of summary judgment against him in favor of State Farm.

For fraudulent concealment to toll the limitations period, a plaintiff must first show that a defendant "engage[d] in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003) (citing *Berisford v. Jack Eckerd Corp.*, 667 So. 2d 809, 811 (Fla. Dist. Ct. App. 1995)). "As a general rule, a plaintiff relying on the doctrine of fraudulent concealment must show affirmative actions by the defendant constituting concealment." *Hill v. Texaco, Inc.*, 825 F.2d 333, 335 (11th Cir. 1987). The plaintiff must also prove that the concealed facts could not have been discovered with reasonable diligence. *See Berisford*, 667 So. 2d at 812 ("[A] party seeking to avail itself of the doctrine of fraudulent concealment must have exercised reasonable care and diligence in seeking to learn the facts which would disclose the fraud."); *see also Hill v. Texaco, Inc.*, 825 F.2d 333, 335 (11th Cir. 1987) (a party

relying on fraudulent concealment "must also show that he exercised diligence to discover his cause of action within the limitations period").

State Farm produced substantial evidence of affirmative misrepresentations by Lorites sufficient to survive Lorites's own motion for summary judgment: the clinics, including PR, where Lorites served as medical director, repeatedly submitted paperwork to State Farm representing that services performed were lawful and medically necessary; Lorites signed medical director agreements affirming his responsibility to ensure that billing was not unlawful, even though it was; and State Farm was unaware that LMTs were performing unlawful and non-compensable services because the forms submitted by the clinics were signed by either the treating physicians or the medical directors at the clinics, not LMTs. In denying Lorites's motion for summary judgment, the district court correctly concluded that "State Farm has presented facts establishing that Pain Relief and Dr. Lorites made affirmative misrepresentations" that were "intended to conceal the actual facts from State Farm."

But the district court failed to consider whether State Farm exercised reasonable diligence. State Farm contends that the clinics repeatedly submitted CMS 1500 forms and accompanying medical records representing that services performed at the clinics were both lawful and medically necessary, and that it "did not and *could not know* of the underlying scheme" based on the paperwork submitted by the clinics. But State Farm also conceded that it

"presume[d]" that the bills submitted by PR contained lawfully rendered services and "relied on the bills submitted by Pain Relief" when issuing payments. And it admitted that the ongoing threat of litigation over delayed payments compelled it to "rely on the representation of the CMS 1500 form [that] the services were medically necessary and lawfully rendered." State Farm, then, has not established as a matter of law that the paperwork submitted by PR—especially the medical records submitted along with PR's CMS forms—would not have exposed the relevant facts had it exercised reasonable diligence and examined them earlier. *Berisford*, 667 So. 2d at 812 ("Knowledge of information contained in accessible medical reports is imputed to the party.").

Accordingly, we conclude that the district court correctly denied Lorites's own motion for summary judgment but erred when it granted State Farm's motion. As to Lorites's motion, viewing the record in the light most favorable to State Farm, genuine issues of material fact exist as to whether fraudulent concealment tolled the statute of limitations, precluding judgment as a matter of law in favor of Lorites. But when reviewing State Farm's motion, we are required to view the facts in the light most favorable to Lorites. *See Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1317 (11th Cir. 2021) (when reviewing rulings on cross-motions for summary judgment, we view the facts "in the light most favorable to the non-moving party on each motion") (quoting *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012)). Applying that standard to State

Farm's motion, material issues of fact also exist, which require that we reverse the district court's grant of summary judgment in State Farm's favor.

## IV.    CONCLUSION

For the foregoing reasons, the district court's summary judgment in favor of State Farm is **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**.